U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2012 DEC 13 PM 4: 05

CLERK
BY ___PC___
DEPUTY CLERK

GMAC MORTGAGE, LLC, )
)
      Defendant/Appellant, )
)
v. )   Case No. 5:12-cv-96
)
DAVID ROY ORCUTT and HOLLIE )
JEAN STEVENS, )
)
      Appellees/Debtors. )

### OPINION AND ORDER VACATING AND REMANDING BANKRUPTCY COURT'S ORDER GRANTING DEBTORS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
(Doc. 1-18, 1-19)

This matter comes before the court on the appeal by GMAC Mortgage, LLC ("GMAC") from an Order of the United States Bankruptcy Court for the District of Vermont (the "Bankruptcy Court"), granting the motion for summary judgment filed by Debtors David Orcutt and Hollie Stevens ("Debtors") and denying GMAC's cross-motion for summary judgment. (Doc. 1-18, 1-19.) At issue is the Bankruptcy Court's declaratory judgment, ruling the mortgage Ms. Stevens executed and delivered to GMAC in 2007 (the "2007 Mortgage") inoperative under Vermont law.

On July 10, 2012, the court heard oral argument on GMAC's appeal. The court raised *sua sponte* the issue of the Bankruptcy Court's jurisdiction in light of *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The parties' supplemental briefing on this issue was completed on August 31, 2012. GMAC contends that the Bankruptcy Court lacked subject matter jurisdiction to "adjudicate Debtors' pure state law claim against GMAC absent its consent." (Doc. 14 at 2.) Debtors contend that the Bankruptcy Court had "core jurisdiction under 28 U.S.C. § 157(b)(2)(k) because it has a direct and decisive impact on

whether the Chapter 13 Plan will be confirmed and on how much the creditors will be paid" and assert that "*Stern* plays no part in the determination of the validity of a Vermont mortgage." (Doc. 15 at 2.)

On November 20, 2012, the court granted the parties the opportunity to file further supplemental briefing on the issue of the Bankruptcy Court's subject matter jurisdiction in light of a recent decision by the Court of Appeals for the Sixth Circuit in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), which was issued after the close of the parties' briefing. The parties completed the filing of their supplemental memoranda on December 6, 2012.

GMAC is represented by James B. Anderson, Esq. Debtors are represented by Michelle M. Kainen, Esq.

## I. Factual and Procedural Background.

### A. The Undisputed Facts.

Debtors are husband and wife, married on February 14, 1997. By warranty deed dated July 20, 1999, they purchased real property located at 120 Clarksville Road, Tunbridge, Vermont (the "Tunbridge Property"), as tenants by the entirety. At all relevant times, the Tunbridge Property was Debtors' homestead.[1] At the time of the initial purchase of the Tunbridge Property, Debtors executed a note (the "1999 Note") for $39,000 and corresponding mortgage (the "1999 Mortgage") in favor of Katrina B. Clark.

On October 10, 2001, Debtors executed and delivered a note and mortgage on the Tunbridge Property in favor of Beneficial Finance of New Hampshire (the "2001 Mortgage"), in the amount of $15,000. Debtors refinanced the 1999 and 2001 debts in 2004 through a note (the "1st 2004 Note") and a mortgage on the Tunbridge Property in favor of GMAC (the "1st 2004 Mortgage"). As a result of the 2004 refinancing, both the 1999 Mortgage and the 2001 Mortgage were discharged. Also in 2004, Debtors

---

[1] Under Vermont law, "[t]he homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided." 27 V.S.A. § 101.

2

borrowed an additional $15,000 from GMAC. This amount was documented in a separate note (the "2nd 2004 Note") and was secured by a new mortgage in favor of GMAC on the Tunbridge Property (the "2nd 2004 Mortgage").

In 2007, Ms. Stevens unilaterally executed a note (the "2007 Note") and the 2007 Mortgage on the Tunbridge Property in favor of GMAC for $105,000. Ms. Stevens used the proceeds from the 2007 Note to pay credit card debts in the amount of $22,773.00, received $11,206.29 in cash, paid closing costs, and obtained a discharge of the 2004 Notes and 2004 Mortgages. Mr. Orcutt did not execute either the 2007 Note or the 2007 Mortgage, although he was present at the closing.[2]

**B.    The Bankruptcy Court Proceedings.**

On June 9, 2011, Debtors filed a voluntary petition for bankruptcy protection (the "Petition"). Schedule A to the Petition lists the Tunbridge Property as jointly held by the parties as tenants by the entirety with a value of $110,600.00. Debtors' Schedule D lists three statutory liens totaling $7,496.00. In Schedule C, Debtors' claim an exemption in the amount of $103,104.00. In their Petition, Debtors list GMAC as a creditor holding an unsecured, nonpriority claim and note: "Money loan[e]d for invalid mortgage on primary residence[.]" (Case No. 11-10553, Doc. 1 at 25.)

On June 10, 2011, Debtors filed an adversary proceeding with the Bankruptcy Court. In their Amended Complaint dated June 17, 2011, Debtors asserted: "This is an action to determine the nature, extent and validity of the mortgage on the debtors' residence, pursuant to 27 V.S.A. § 141, 27 V.S.A. § 349, 11 U.S.C. § 522 and Federal Rule of Bankruptcy Procedure 7001." (Doc. 1-5 at 1.) They asked the Bankruptcy Court to issue a declaratory judgment that the 2007 Mortgage was void because Mr. Orcutt did not sign the mortgage or join in the conveyance, and under Vermont law, "[i]n order to

---

[2] This fact is not included in the Bankruptcy Court's Order but was submitted as an undisputed fact in the cross-motions for summary judgment. GMAC contends this omitted fact is material because it demonstrates that Mr. Orcutt had knowledge of and benefitted from the 2007 transaction which, among other things, discharged his obligations under the 2004 Notes and Mortgages, discharged credit card debt which may be marital in nature, and brought cash into the household of which he was a member.

3

convey an interest in a homestead, both spouses must join in the execution of the conveyance." *Id.* at 3.

On July 21, 2011, GMAC moved to dismiss the adversary proceeding, arguing that Debtors were essentially pursuing an avoidance action which could only be brought by the Chapter 13 trustee under 11 U.S.C. §§ 544-55. It further argued that any claim belonged to the estate and "11 U.S.C. § 1303 contains an exclusive list of the Chapter 13 trustee powers that a Chapter 13 debtor may exercise. The right to assert a cause of action against the estate's creditors does not appear in 11 U.S.C. § 1303." (Doc. 1-9 at 2.)

In denying GMAC's motion to dismiss, the Bankruptcy Court disagreed that the adversary proceeding was "a trustee avoidance action in disguise" and concluded that "[t]he Debtors' amended complaint seeks a declaratory judgment determining the nature, extent and validity of a mortgage pursuant to 11 U.S.C. § 522 and 27 V.S.A. §§ 141 and 349." (Doc. 1-11 at 2) (footnote omitted). The Bankruptcy Court did not reach the issue of "[w]hether a debtor may independently assert the trustee's avoidance powers" because it found that the Debtors "are proceeding under § 522[.]" *Id.* at 2 n.2. The court concluded that the Debtors had standing to pursue the adversary proceeding on that basis and were entitled to have the "Court decide the merits of their claims under § 522(h) and 27 V.S.A. §§ 141 and 349." *Id.* at 4.

On October 1, 2011, Debtors moved for summary judgment on Count I of the Amended Complaint, identifying four undisputed facts as mandating judgment in their favor: "(1) Plaintiffs purchased their homestead while married to each other; (2) Plaintiffs remain married to each other; (3) Plaintiffs continue to occupy the property as their homestead; and (4) the mortgage deed to GMAC was executed only by the wife." (Doc. 1-14 at 1.) Debtors cited Vermont law as the basis for the relief they sought; they did not rely on any provision of the Bankruptcy Code.

GMAC, which had objected to both the confirmation of the Chapter 13 Plan and to Debtors' claimed homestead exception, opposed Debtors' motion and cross-moved for summary judgment in its favor on both counts of Debtors' Amended Complaint. Among

4

other things, GMAC argued that Plaintiffs were impermissibly seeking to utilize the trustee's powers to avoid a lien under 28 U.S.C. §§ 522 and 544 and lacked standing to do so, especially when the outcome was to deplete the bankruptcy estate. GMAC further argued that the Bankruptcy Court must consider the competing equities in deciding whether to permit Mr. Orcutt to be unjustly enriched by the 2007 transaction, at GMAC's expense and to the detriment of the unsecured creditors. On October 14, 2011, GMAC filed a proof of claim for a secured claim in the amount of $107,747.63.

By Order dated February 24, 2012, the Bankruptcy Court granted Debtors' motion for summary judgment on Count I of the Amended Complaint "because the 2007 Mortgage does not meet the requirements of 27 V.S.A. § 141, and the 2007 Mortgage is declared to be inoperative." (Doc. 1-19 at 1.) The Bankruptcy Court denied GMAC's cross-motion for summary judgment and concluded that it did not need to reach the issues GMAC had raised with regard to Count II. The Bankruptcy Court issued a separate Memorandum of Decision, further explaining its decision.

### C. The Bankruptcy Court's Memorandum of Decision.

In its Memorandum of Decision, the Bankruptcy Court described its jurisdiction over the adversary proceeding as follows: "This Court has jurisdiction over this adversary proceeding and the instant motions pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 157(b)(2)(K)." *In re Orcutt*, 2012 WL 627675, at *1 (Bankr. D. Vt. Feb. 24, 2012). The Bankruptcy Court noted that it had initially treated the matter as one arising under 11 U.S.C. § 522, but now concluded that the prefatory statement in Debtors' Amended Complaint, which referenced § 522, was in error because neither count of the Amended Complaint actually referred to that statutory section but "[r]ather, the two counts of the amended complaint rely solely upon 27 V.S.A. § 141 and 27 V.S.A. § 349." *Id.* at 3. The court acknowledged that in its previous opinion denying GMAC's motion to dismiss Debtors' Amended Complaint, the court had relied on 11 U.S.C. § 522, explaining that "there are several aspects to this dispute over whether the granting of the Mortgage was a voluntary transfer for purposes of § 522." (Doc. 1-11 at 3.) The court stated that it was "now persuaded that [Debtors'] reference to § 522 in the

5

opening paragraph of the amended complaint is not determinative of the outcome, and in fact was superfluous [because] [t]he clear thrust of the [Debtors'] amended complaint is for a ruling as to the validity of the Defendant's mortgage lien." *In re Orcutt*, 2012 WL 627675, at *3. The Bankruptcy Court thus concluded that Debtors were not seeking relief under 11 U.S.C. §§ 522 and 544, but were instead "seeking a determination regarding the extent and validity of a lien under 28 U.S.C. § 157(b)(2)(K)[.]" *Id.* at *4. The court further observed that the Debtors were seeking relief "that is more akin to an objection to the Defendant's claim or a determination of the Defendant's secured status under § 506, than to a trustee avoidance action." *Id.* Based on these conclusions, the Bankruptcy Court ruled that "[Debtors] have standing to seek a determination as to the validity of [GMAC's] mortgage lien as a core proceeding in this [Bankruptcy] Court. To the extent this [Bankruptcy] Court's earlier ruling suggested otherwise, it is hereby overruled." *Id.* at 3.

The Bankruptcy Court then proceeded to issue a declaratory judgment under Vermont law, and concluded that the 2007 Mortgage was void based upon 27 V.S.A. § 141 which provides:

> A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution and acknowledgement of such conveyance. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter.

*Id.* at *4 (quoting 27 V.S.A. §141(a)). In declaring the 2007 Mortgage "inoperative," the Bankruptcy Court relied upon the undisputed facts that Debtors held the Tunbridge Property as tenants by the entirety, were married at the time Ms. Stevens executed the 2007 Mortgage, and Mr. Orcutt did not join in that conveyance.

The Bankruptcy Court rejected GMAC's challenge to the adequacy of the Debtors' homestead exemption and found that Debtors had fully exempted their interest in their homestead property by listing its value and the three statutory liens with the

6

"claimed homestead exemption of $103,104.00 [being] the difference between the value of the property and the amount due on the statutory liens." *Id.* at *5.

The Bankruptcy Court also considered and rejected GMAC's arguments that: (1) the 2007 Mortgage could be traced to the 1999 Mortgage and should therefore benefit from the security interest created by that mortgage, and (2) the 2007 Mortgage should be equitably subrogated to the 2004 Mortgages because the proceeds from the 2007 Note discharged the obligations of the 2004 Notes. *Id.* at *5-6.

### D. GMAC's Motion for Reconsideration.

GMAC sought reconsideration of the Bankruptcy Court's Order, arguing that "[Debtors] [were] attempt[ing] to usurp the avoided mortgage for their benefit rather than for their creditors' benefit" and further asserting that Debtors "cannot meet their burden under 11 U.S.C. § 522(h) which bars debtors from avoiding consensual mortgage liens on exempt property." (Doc. 1-20 at 2) (citing *In re Terry*, 56 B.R. 538, 540 (Bankr. D. Vt. 1986) ("Grant of a mortgage is a voluntary transfer and debtors lack standing under 11 U.S.C. § 522(h) to avoid the mortgage.")). GMAC further argued that regardless of how Debtors described their cause of action, they lacked the trustee's powers to litigate causes of actions that belong to the estate. GMAC pointed out that the Bankruptcy Court had previously rejected the Debtors' theory that they had standing to bring a declaratory judgment action to challenge the 2007 Mortgage and asked the court to resurrect that earlier conclusion which GMAC claimed was consistent with Second Circuit precedent. Finally, GMAC asked the Bankruptcy Court to reconsider its decision on GMAC's tracing argument, asserting that under Vermont law, Debtors "may not exempt their homestead in bankruptcy to the extent of any traceable debt that existed at the time they acquired their homestead, including purchase money debt" (Doc. 1-20 at 7-8) which GMAC calculated as being $29,857.60. GMAC argued the 2007 Mortgage remained enforceable as to that allegedly traceable amount. Debtors opposed reconsideration.

By Order dated March 12, 2012, the Bankruptcy Court denied reconsideration, concluding that GMAC pointed to no change in the law or new evidence. The Bankruptcy Court ruled that the issue of whether "the Court erroneously found Plaintiffs

7

have standing to bring a declaratory judgment action to determine the validity of GMAC's mortgage . . . is an issue for appeal, not reconsideration." *In re Orcutt*, 2012 WL 909323, at * 2 (Bankr. D. Vt. Mar. 12, 2012).

## II. Conclusions of Law and Analysis.

On appeal, GMAC challenges the decision of the Bankruptcy Court on four grounds. It asserts: (1) the Bankruptcy Court lacked subject matter jurisdiction over Debtors' adversary proceeding; (2) Debtors lack standing to challenge the enforceability of the 2007 Mortgage in Bankruptcy Court; (3) the 2007 Mortgage is enforceable or partially enforceable under Vermont law; and (4) if void, discharge of the 2007 Mortgage should accrue to the benefit of the bankruptcy estate and unsecured creditors, not Debtors. The court reaches only the first of these issues as it requires remand to the Bankruptcy Court.

### A. Standard of Review.

The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). Federal Rule of Bankruptcy Procedure 8013 establishes the standard governing a district court's review of a bankruptcy court's order, and states that a district court functions as an appellate court and may affirm, modify, reverse, or remand an order with instructions for further proceedings. *See* Fed. R. Bankr. P. 8013.

Findings of fact "shall not be set aside unless clearly erroneous." *Id.*; *see also In re Lehman Brothers Inc.*, 478 B.R. 570, 582 (S.D.N.Y. 2012) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.") (citation omitted). A bankruptcy court's conclusions of law, however, are reviewed *de novo*. *See Teamsters Airline Div. v. Frontier Airlines, Inc.*, 2009 WL 2168851, at *5 (S.D.N.Y. July 20, 2009) (citing *In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir. 1992)). As a result, this court must "review[] the Bankruptcy Court's grant of summary judgment *de novo*." *Schackner v. Breslin Realty Development Corp.*, 2012 WL 32624, at *3 (E.D.N.Y. Jan. 5, 2012).

8

### B. Whether the Bankruptcy Court Had Subject Matter Jurisdiction Over Debtors' Adversary Proceeding.

GMAC asserts that the Bankruptcy Court lacked subject matter jurisdiction to grant a final judgment on the state law question of whether the 2007 Mortgage was a valid conveyance. Debtors respond that the Bankruptcy Court had statutory authority pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(K) to determine the validity of the lien, the authority under 11 U.S.C. § 502 to allow or disallow GMAC's secured claim, and the authority under 11 U.S.C. § 506 to determine a creditor's secured status. Debtors contend their adversary proceeding was a core proceeding under § 157(b)(2)(K) "because it has a direct and decisive impact on whether the Chapter 13 Plan will be confirmed and on how much the creditors will be paid." (Doc. 15 at 2.) Debtors do not address whether the Bankruptcy Court has constitutional authority to decide their adversary proceeding but instead merely assert that "*Stern* plays no part in the determination of the validity of a Vermont mortgage." *Id.*

On appeal, GMAC concedes that the Bankruptcy Court had statutory authority when the matter began as a core proceeding because Debtors' Amended Complaint invoked 11 U.S.C. § 522 and state law to challenge whether GMAC's 2007 Mortgage impaired the Debtors' homestead exemption. It also acknowledges that "*Stern* and § 157(b)(2) & (3) allow the bankruptcy court to adjudicate state law rights in the context of administering the Bankruptcy Code in a core proceeding." (Doc. 14 at 1.) However, it contends "this matter became a non-core proceeding when the bankruptcy court, with no prior notice to GMAC, held § 522 completely irrelevant, and declared Debtor[s'] rights against GMAC solely under 27 V.S.A. § 141(a)." *Id.* at 2. This court agrees that, in the circumstances of this case, the Bankruptcy Court lacked the constitutional authority to adjudicate Debtors' adversary proceeding solely as a matter of state law.

### C. *Stern v. Marshall* and its progeny.

"[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Each district court may provide that . . . any or all proceedings arising

9

under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges." 28 U.S.C. § 157(a).[3] The federal courts' "related to" jurisdiction is broad and a claim is "related to" a bankruptcy case if the "outcome of that [claim] could conceivably have any effect on the estate being administered in bankruptcy." *Waldman*, 698 F.3d at 916 (citations omitted); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (same). Accordingly, a debtor's purely state law claim, even for affirmative relief, "may be adjudicated in federal court on the basis of its relationship to the [bankruptcy] petition[.]" *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 72 n.26 (1982) (plurality opinion).

In *Stern v. Marshall*, the United States Supreme Court considered the extent to which the federal court's jurisdiction could be exercised by a bankruptcy court. It concluded that the adjudication of so-called "private rights" meaning "the liability of one individual to another under the law as defined" is part of the judicial power reserved to Article III courts under the Constitution. *Stern*, 131 S. Ct. at 2612 (quoting *Crowell v. Benson*, 285 U.S. 22, 50, 51 (1932)). As a result, regardless of any statutory authority, bankruptcy courts could not enter a final judgment on state law claims adjudicating the liability as between individuals unless the claim fell within the so-called "public rights" exception to Article III. *See id.* at 2613. A public rights claim is one that "derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." *Id.* at 2613.

The *Stern* Court recognized an important distinction between proceedings which are entrusted to the bankruptcy courts' special expertise, and proceedings which are not. The Bankruptcy Code, itself, reflects this distinction. *See Waldman*, 698 F.3d at 916-17 ("Congress has granted bankruptcy judges differing authority depending on whether a claim in bankruptcy is 'core' or not."). Bankruptcy judges are statutorily authorized to

---

[3] At the time of the Bankruptcy Court's Order, the United States District Court for the District of Vermont had a standing order that "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11, shall be, and hereby are, referred to the United States Bankruptcy Court for the District of Vermont." *Standing Reference Order* (D. Vt. May 14, 1986).

10

"hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section." 28 U.S.C. § 157(b)(1); *see also In re Ben Cooper, Inc.*, 896 F.2d 1394, 1397 (2d Cir. 1990) ("The jurisdiction of the bankruptcy court over core proceedings is set forth in 28 U.S.C. § 157(b)(1)[.]"). In non-core proceedings, the bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after . . . reviewing de novo" the objections of either party. 28 U.S.C. § 157(c)(1).

"Whether a proceeding is core is determined on a claim-by-claim basis." *Waldman*, 698 F.3d at 921 (citing *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008)). "Claims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise under Title 11 and are deemed core proceedings. So too are proceedings that, by their nature, could arise only in the context of a bankruptcy case." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-109 (2d Cir. 2006) (internal citations omitted); *DeWitt Rehab. and Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012) ("A proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding.").

In this case, in addition to state law, the Bankruptcy Court cited 28 U.S.C. § 157(b)(K)(2), governing "determination of the validity, extent, or priority of liens," as the source of its authority to enter final judgment in Debtors' adversary proceeding and as the basis for its conclusion that the adversary proceeding before it was a "core" proceeding. In *Stern*, the Court noted that although in "past cases, we have suggested that a proceeding's 'core' status alone [under §157] authorizes a bankruptcy judge, as a statutory matter, to enter final judgment in the proceeding," *Stern*, 131 S. Ct. at 2604, there are instances in which § 157(b) statutorily permits a bankruptcy court to enter final judgment, but "Article III of the Constitution does not." *Id.* at 2608. Accordingly, notwithstanding § 157(b)(2)(C)'s designation of "counterclaims by the estate against persons filing claims against the estate" as a "core proceeding," some counterclaims fall within the bankruptcy courts' authority to enter a final judgment and some counterclaims

11

do not. *Id.* at 2620 (holding that the bankruptcy courts lack "the constitutional authority to enter a final judgment on a state law counterclaim *that is not resolved in the process of ruling on a creditor's proof of claim.*") (emphasis supplied).

To the extent Debtors' adversary proceeding sought a declaratory judgment under state law that the 2007 Mortgage was invalid, the claim could have been brought in state court at any time subsequent to the 2007 transaction and did not in any way require a bankruptcy proceeding for its existence. Moreover, Debtors' claim is not one that falls "within any of the varied formulations of the public rights exception in [the Supreme] Court's cases." *Stern*, 131 S. Ct. at 2614. "It is not a matter that can be pursued only by grace of the other branches, . . . or one that 'historically could have been determined exclusively by' those branches[.] The claim is instead one under state . . . law between two private parties. It does not 'depend[ ] on the will of congress,' Congress has nothing to do with it." *Id.* (internal citations omitted). "In addition, [Debtors'] claimed right to relief does not flow from a federal statutory scheme, . . . [i]t is not 'completely dependent upon' adjudication of a claim created by federal law," and "[t]his is not a situation in which Congress devised an 'expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination and determination by an administrative agency specially assigned to that task.'" *Id.* at 2614-15 (internal citations omitted). Finally, GMAC never consented to resolution of Debtors' claim in the bankruptcy court proceedings; it proceeded in that forum because it was required to do so if it sought to collect its debt. *See id.*

Accordingly, Debtors' request for a declaratory judgment regarding the application of Vermont law to the 2007 Mortgage neither involved substantive rights created by federal bankruptcy law, nor constituted proceedings that, by their nature, could only arise in the context of a bankruptcy case. *See Stern*, 131 S. Ct. at 2618 (characterizing counterclaim as lying outside bankruptcy court's jurisdiction to enter a final judgment because it "is in no way derived or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding."). Consistent with Debtors' request, the Bankruptcy Court appears to have adjudicated Debtors'

12

adversary proceeding entirely under state law and entered a final declaratory judgment solely on that basis. *See In re Orcutt*, 2012 WL 627675, at *4 (noting that "[t]he Plaintiffs seek a declaration, under count I of the amended complaint, that the 2007 Mortgage is void based upon 27 V.S.A. § 141."); Doc. 1-19 at 1 (ordering that judgment be "entered in favor of the [Debtors] on count I of the amended complaint because the 2007 Mortgage does not meet the requirements of 27 V.S.A. § 141, and the 2007 Mortgage is declared to be inoperative."); Doc. 1-22 at 2 (denying reconsideration and ruling whether the court had jurisdiction to issue a declaratory judgment action to determine the validity of the 2007 Mortgage under state law was a question for appeal).

This case appears to present no alternate ground for the Bankruptcy Court's subject matter jurisdiction. The Bankruptcy Code does not authorize a bankruptcy court to issue a declaratory judgment in a vacuum and, in this case, the Bankruptcy Court's ruling appears to be untethered to any proceeding recognized by the Bankruptcy Code. As GMAC points out:

> [T]he bankruptcy court, as a court of limited jurisdiction, does not have the general jurisdiction of the Vermont Superior Court to adjudicate state law property rights in a vac[u]um. The bankruptcy court's power to adjudicate state law property rights is derived from and limited by the Code. The bankruptcy court may not adjudicate debtors' state law property rights independently of administering a case under title 11 or adjusting the debtor creditor relationship in compliance with the Code. But that is just what the bankruptcy court did.

(Doc. 9 at 4.) It thus remains unclear whether the Bankruptcy Court was engaged in a function entrusted to it by the Bankruptcy Code, or was simply acting as a court of general jurisdiction.

The First Circuit's decision in *DiVittorio v. HSBC Bank USA, NA*, 670 F.3d 273 (1st Cir. 2012), is distinguishable because, in that case, the bankruptcy court considered a question of state law in the context of deciding a motion for relief from the automatic stay, not as an independent declaratory judgment action based exclusively on state law. *See DiVittorio*, 670 F.3d at 282 n.4 (finding *Stern* did not affect "the jurisdiction of the bankruptcy court to render a decision in this matter . . . [because] [h]ere, however, it first

13

was necessary to resolve the validity of Mr. DiVittorio's claim under the [Massachusetts Consumer Credit Cost Disclosure Act] to determine whether HSBC was entitled to relief from the automatic stay."). As the Sixth Circuit recently pointed out, the distinction is critical:

> *Stern* thus provides a summary of the law in this area: When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate . . . the bankruptcy court's authority is at its constitutional maximum. [*Stern,*] 131 S. Ct. at 2617-18. But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline*; or when the debtor pleads an action that would augment the bankrupt estate, but not "necessarily be resolved in the claims allowance process[,]" 131 S. Ct. at 2618; then the bankruptcy court is constitutionally prohibited from entering final judgment. *Id.* at 2614.

*Waldman*, 698 F.3d at 920. *Waldman* provides further guidance regarding how a court should proceed when, as here, the two types of claims overlap.

In *Waldman*, a Chapter 11 debtor brought an adversary proceeding against his principal creditor, Waldman, among others, asserting fraud claims. The debtor asked for two forms of relief: a discharge of the creditor's claims (the "disallowance claim") and affirmative relief in the form of damages or specific performance (the "affirmative claims"). Waldman filed a counterclaim, seeking to collect unpaid debts and relief from the automatic stay. Following a bench trial, the bankruptcy court found that Waldman had obtained virtually all of the debtor's business assets by fraud. Accordingly, the court granted relief in the form of a discharge of the debtor's debts to Waldman and an award to the debtor of more than three million dollars in compensatory and punitive damages.

On appeal, Waldman challenged, among other things, the bankruptcy court's constitutional authority to adjudicate the parties' claims. The debtor pointed out that his affirmative claims were based upon the same conduct as his disallowance claim. The *Waldman* court, however, rejected the notion that "some overlap" between the claims was sufficient. It explained that *Stern* held that in order for a bankruptcy court to adjudicate the affirmative state law claims on that basis, "there must have been, at the outset of the claims-disallowance process, 'reason to believe that the process of adjudicating [the]

14

proof of claim would necessarily resolve'" the affirmative claims. *Id.* at 921 (quoting *Stern*, 131 S. Ct. at 2617). Because the debtor's affirmative claims required proof of facts beyond what would be required in the claims disallowance process, they were outside the bankruptcy court's jurisdiction. The *Waldman* court thus found that the bankruptcy court was within its constitutional authority to adjudicate the disallowance claim, but held that it could not enter final judgment on Stone's affirmative claims. It explained that, like the counterclaim in *Stern*, those claims sought an adjudication of private rights and "arose exclusively under state law and existed without regard to any bankruptcy proceeding." *Id.* at 921. It thus remanded Stone's affirmative claims to the bankruptcy court to "recast its final judgment as to these claims as proposed findings of fact and conclusions of law, which the district court shall review de novo." *Id.* at 923.

In contrast, the *Waldman* court found that "Stone's disallowance claims were part and parcel of the claims-allowance process in bankruptcy." *Id.* at 920. It rebuffed Waldman's argument that because he did not file a proof of claim, claims allowance never occurred. As the *Waldman* court pointed out, "[h]ere Waldman was Stone's principal creditor and surely would have filed a proof of claim if Stone had not beat him to the courthouse with an adversarial proceeding. Indeed it was Waldman's attempt to collect on Stone's debts that pushed Stone into bankruptcy in the first place." *Id.* The court then concluded that the bankruptcy court had constitutional authority to enter final judgment on a claims-disallowance basis:

> [W]e recognize that the Supreme Court has never squarely decided whether Article III allows a bankruptcy court to enter judgment on a debtor's objections to a creditor's proof of claim. But neither has the Court ever intimated that Article III bars a bankruptcy court from performing this function –"which is of basic importance in the administration of the bankruptcy estate[.]" *Katchen* [*v. Landy,*] 382 U.S. [323,] 329 [(1966)] (internal quotation marks omitted). All the intimations instead point the other way: in *Northern Pipeline*, for example, the Court said that this function—"the core of the federal bankruptcy power"—"may well be" a matter of public right. 458 U.S. at 71 (plurality opinion). And in *Stern*, the Court explained its result in that case, and in prior ones, partly by reference to whether the claims were practically subsumed in the claims-allowance process. 131 S. Ct. at 2617. We do not read the Court's precedents to

15

Case 1:16-cv-00096-49 Document 14-2 Filed 12/13/12 Page 16 of 19
Case 16132-dc00096-49 Document 1432 Entered 12/13/12 Page 16 of 19 13:11
Desc      Main Document      Page    16 of 19

require the bankruptcy courts to abandon this power, which they have
exercised for more than two centuries. *See* Act of Apr. 4, 1800, ch. 19, 2
Stat. 19 (repealed 1803) (creating the federal bankruptcy courts). We
therefore hold that the bankruptcy court here was authorized to enter final
judgment on Stone's disallowance claims.

*Id.* at 920-21.

Under *Stern* and *Waldman* as applied to this case, the Bankruptcy Court lacked the constitutional authority to issue a declaratory judgment under Vermont law in order to adjudicate a purely state law claim involving private rights. It, however, possessed the constitutional authority to determine the validity of the 2007 Mortgage as part of the claims allowance process,[4] or as an integral part of another proceeding under the Bankruptcy Code. *See In re Sundale, Ltd.*, 2012 WL 5974125, at *4 (11th Cir. Nov. 29, 2012) (affirming bankruptcy court's declaratory judgment regarding the extent, validity and priority of claims and debtor's recoupment counterclaim because both claims were "necessarily resolved in the process of ruling on a creditor's proof of claim."); *DiVittorio*, 670 F.3d at 282 n.4; *In re Pulaski*, 475 B.R. 681, 683 (W.D. Wis. 2012) (ruling bankruptcy court has jurisdiction to enter a final judgment in debtors' adversary proceeding in which debtors challenged creditor's proof of claim because "[c]learly this is part of the claims process, as the [debtors'] claims will be resolved at exactly the same time that there is a final determination as to whether the creditor is secured or not.").

Although the Bankruptcy Court aptly observed that, "[Debtors] are seeking relief that is more akin to an objection to the Defendant's claim or a determination of Defendant's secured status under § 506[,]" *In re Orcutt*, 2012 WL 627675, at *4, it did not adjudicate the claim on this basis but instead decided the issue purely as a matter of state law. As a result, this court thus cannot affirm the Bankruptcy Court's decision on the basis of claims allowance as the Sixth Circuit did in *Waldman*.

---

[4] Debtors would have standing to object to GMAC's proof of claim. *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."); *see also In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1055 (5th Cir. 1986) ("Equally clear is the standing of the debtor and any interested creditor to object to the claim of a secured creditor filed in the bankruptcy proceeding.").

16

Moreover, as GMAC repeatedly points out, by adjudicating the claim as purely a question of state law, the Bankruptcy Court did not consider the competing equities, especially those that pertain to the unsecured creditors.[5] "For many purposes, courts of bankruptcy are essentially courts of equity," *Pepper v. Litton*, 308 U.S. 295, 304 (1939), and the claims allowance process, which resolves debtor-creditor relations, is specifically equitable in nature. *See Grandfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989) (when an issue "arises as part of the process of allowance and disallowance of claims, it is triable in equity.") (quoting *Katchen*, 382 U.S. at 336). Accordingly, "[e]ven though a claim may be valid and enforceable under state law, the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law." *In re Murgillo*, 176 B.R. 524, 531 (B.A.P. 9th Cir. 1995) (citing *Pepper*, 308 U.S. at 304).

"The bankruptcy court does not apply the law of the state in determining what claims are allowable and how a debtor's assets will be distributed." *Id.* (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)). This, of course, does not mean state law is irrelevant. *See Green*, 329 U.S. at 162 ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law."); *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007) ("'[P]roperty interests are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'") (citation omitted). Instead, it is "clear that the principles of equity may not be invoked in a 'freewheeling fashion . . . they also necessarily operate within the boundaries set by statute.'" *In re Murgillo*, 176 B.R. at 531 (quoting *Matter of Tucson Yellow Cab Co.*, 789 F.2d 701, 704 (9th Cir. 1986)).

---

[5] The Bankruptcy Court's determination of GMAC's equitable subordination and tracing claims reflected equitable considerations but this was not the basis on which it decided Debtors' affirmative claim for a declaratory judgment.

17

"The bankruptcy court derives its equitable powers from § 105(a) of the code" and "may exercise its equitable power only as a means to fulfill some specific code provision; it may not use its equitable powers to achieve a result not contemplated by the code." *Id.* (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (internal footnote omitted). The Second Circuit has explained that:

> "It has long been a basic function of the bankruptcy court, both by reason of its equitable powers and the bankruptcy statute, to pass upon the validity of creditors' claims." *In re Farrell,* 27 B.R. 241, 245 (Bankr. E.D.N.Y. 1982). The bankruptcy court "in passing on allowance of claims sits as a court of equity . . . In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper* [ ], 308 U.S. [ ]at 307-08 [ ]. This sifting includes "full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence. *And the mere fact that a claim has been reduced to judgment does not prevent such an inquiry."* *Pepper*, 308 U.S. at 305 (citations omitted) (emphasis supplied). These broad powers have been "invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper*, 308 U.S. at 305[.]

*Kelleran v. Andrijevic*, 825 F.2d 692, 698-99 (2d Cir. 1987).

Here, GMAC contends that Debtors will receive a windfall and unjust enrichment at the expense of GMAC and their unsecured creditors if the Bankruptcy Court does not exercise its equitable powers. *See* Doc. 4 at 24 (arguing that Mr. Orcutt signed all mortgages that encumbered his homestead except for the 2007 Mortgage thereby demonstrating a willingness to waive his homestead rights to borrow money, was present at the closing of the 2007 transaction and thus the conveyance did not occur without his implied consent, and received a discharge of 2004 Notes as well as mortgage proceeds for his household from the 2007 transaction which will result in Debtors' unjust enrichment if they are able to escape their liabilities under the 2007 Note and Mortgage); Doc. 4 at 16 ("Under the bankruptcy court's Rule 7001 Analysis, Debtors avoid the 2007 Mortgage, keep their home and pay nothing extra to their unsecured creditors to remain in their home.").

18

Because the Bankruptcy Court did not consider the equities in adjudicating Debtors' request for a declaratory judgment, this appeal cannot be resolved simply by directing the Bankruptcy Court to recast its decision. On remand, the Bankruptcy Court is directed to clarify the statutory and constitutional basis under which it is proceeding and adjudicate the issues raised by the parties consistent with that statutory and constitutional authority. Although the Bankruptcy Court may well reach the same conclusions, that outcome is not certain.

## CONCLUSION

For the foregoing reasons, the court hereby VACATES the Bankruptcy Court's Order granting summary judgment to Debtors and denying GMAC's cross-motion for summary judgment and REMANDS this proceeding to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 13th day of December, 2012.

Christina Reiss, Chief Judge
United States District Court